UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENAN L. CRUEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-CV-02443-NCC |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kenan L Cruey ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff filed a brief in support of the Complaint (Doc. 22), and Defendant filed a brief in support of the Answer (Doc. 29). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on October 28, 2013 (Tr. 71, 148).[1] Plaintiff was initially denied on June 18, 2014, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 83–89). After hearing, by decision dated August 31, 2016, the ALJ

---

[1] The ALJ noted in his decision that Plaintiff previously filed applications for Supplemental Security Income ("SIB") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*., and DIB on March 20, 1999 (Tr. 10). Those claims were initially denied on May 6, 1999, but were subsequently awarded on the basis of rectal carcinoma (*Id.*). Plaintiff received Title XVI benefits from April 1999 through February 2001, and he received Title II benefits from October 1999 through March 2008 (*Id.*). Plaintiff's benefits ceased because he returned to substantial gainful activity (*Id.*).

-1-

found Plaintiff not disabled (Tr. 7–24). On July 24, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1–6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 8, 2013, the alleged onset date (Tr. 10, 12). The ALJ further found Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, residuals of colon cancer (gastrointestinal system), and chronic pain related to peripheral neuropathy, but the ALJ found no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13–14).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 14). He must have a sit, stand option at the work site with the ability to change positions frequently, further defined as every hour for one minute each, and then can return to the same or a different position (*Id.*).[2] He can occasionally climb ramps and stairs but never ladders or scaffolds (*Id.*). He can occasionally stoop but never kneel, crouch, or crawl (*Id.*). He can frequently push and pull with arms and legs and reach in all directions (*Id.*). He must avoid concentrated exposure to extreme cold, extreme heat, and vibrations, further defining vibrations as performing jobs such as operating jackhammers or other equipment where the operator is significantly vibrated (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including

---

[2]  As Defendant notes, the ALJ states that Plaintiff can "then return to the same of [sic] a different position" (Tr. 14). For the reasons stated in Defendant's brief (Doc. 29 at 2 n.2, Tr. 48), the Court agrees that this appears to be a typographical error and should read "or a different position." Plaintiff makes no objection or argument regarding this presumed typographical error.

garment sorter and retail marker (Tr. 19–20). Thus, the ALJ concluded Plaintiff is not disabled (Tr. 21). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 22).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430–31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises one issue, broadly asserting the ALJ's RFC finding is not based on substantial evidence (Doc. 22 at 14). More specifically, Plaintiff argues that the ALJ's decision that Plaintiff may perform light work is not based on

substantial evidence if Plaintiff is limited to occasional standing and walking (*see*, *e.g.*, Doc. 22 at 15).  For the following reasons, the Court finds that Plaintiff's argument is without merit and that the ALJ's decision is based on substantial evidence and consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863).  *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).  To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments.  *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).  "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC."  *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question."  *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]"  245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).  Thus, an ALJ is

"required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As a preliminary matter, the Court will address Plaintiff's assertion that the ALJ erred in determining his RFC by failing to credit a portion of the consultative examiner's opinion stating Plaintiff was limited to standing and walking only occasionally, which, if credited, would render Plaintiff disabled (Doc. 22 at 14–18, Tr. 300). As background, Dr. Stephen Williamson, M.D. ("Dr. Williamson"), evaluated Plaintiff for the agency (Tr. 80, 296–300). In the notes from the consultative examination, Dr. Williamson concluded in part that Plaintiff "can stand and walk occasionally, limited by back weakness." (*Id.*) As discussed below in more detail, the ALJ gave Dr. Williamson's opinion some weight and provided further limitations beyond those discussed by Dr. Williamson (Tr. 18–19). Plaintiff argues the ALJ does not discredit Dr. Williamson's assessment that Plaintiff can only occasionally stand and walk and, therefore, implicitly agrees with his statement (*see* Doc. 22 at 15). Plaintiff further argues that if Plaintiff is limited to only occasional walking or standing, then the proper determination is one of sedentary work, not light work (*Id.* at 15–16). Because Plaintiff turned 50 years old prior to the ALJ's decision, Plaintiff maintains he would be considered disabled based on the application of the grid if he were able to perform only sedentary work (*Id.* at 16).[3]

---

[3] This issue was raised during the hearing. In response to an alternative hypothetical posed by the ALJ, the vocational expert concluded Plaintiff would be able to perform only sedentary work (Tr. 48). The ALJ asked Plaintiff's counsel if his position was "that at age 50 this case grids at sedentary," and counsel replied affirmatively (*Id.* at 48–49). Defendant does not contest this position (*see generally* Doc. 29).

Even assuming the ALJ agreed Plaintiff could only occasionally stand and walk as Plaintiff argues, the Court finds that such a determination is not inconsistent with the definition of light work under 20 C.F.R. § 404.1567(b). The regulation defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a **full or wide range of light work**, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). Plaintiff highlights the language in this Regulation stating light work "requires a good deal of walking or standing" and further argues *The Dictionary of Occupational Titles* states light work "requires walking or standing to a significant degree" (Doc. 22 at 15). Moreover, Plaintiff cites to Social Security Ruling 83-10, which states the following regarding light work:

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a work day, the **full** range of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour work day. . . .

SSR 83-10, 1983 WL 31251, at *5-6 (1983) (emphasis added). However, while the *full* range of light work requires standing or walking, on and off, for a total of approximately 6 hours, SSR 83-10 specifically discusses the *maximum* standing and walking requirements per each exertional level of work (*Id.*). Here, the ALJ determined Plaintiff is unable to perform the full or wide range of light work; he found Plaintiff has the capacity to perform light work but with limitations (Tr. 14). One such limitation is that Plaintiff must have a sit, stand option at work with the ability to change positions frequently (*Id.*). Plaintiff argues that by not discrediting Dr. Williamson's assessment that Plaintiff can only *occasionally* stand and walk, the ALJ implicitly

agreed Plaintiff can only stand and walk *for less than one-third* of an eight-hour work day (*see* Doc. 22 at 17).

However, Plaintiff's argument is flawed. First, Plaintiff assumes the ALJ agreed Plaintiff can only occasionally stand and walk. But the ALJ was not required to include each and every limitation set forth by Dr. Williamson and was free to consider other relevant evidence. *See*, *e.g.*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("there is no requirement that an RFC finding be supported by a specific medical opinion). For example, a long-time treating provider concluded Plaintiff could stand and walk for four hours and sit for four hours in an eight-hour day (Tr. 19, 327). Second, Plaintiff asserts unequivocally that Dr. Williamson meant less than one-third of the eight-hour work day when he used the word "occasionally," yet Plaintiff provides no support for this argument (*see id.*). As the Court discusses below, other statements in Dr. Williamson's assessment are seemingly inconsistent with such a restricted limitation and, thus, undercut Plaintiff's suggested interpretation. Regardless, courts from this circuit have found that limitations under one-third of an eight-hour work day are consistent with light work. *See*, *e.g.*, *Torres v. Berryhill*, No. CV 15-4416 (JRT/TNL), 2017 WL 1194198, at *3 (D. Minn. Mar. 30, 2017) (citing case and noting "numerous courts have found that a two hour standing or walking limitation is consistent with the definition of a reduced range of light work."). Thus, the Court finds that even if the ALJ determined Plaintiff could stand or walk only occasionally, that limitation is not inconsistent with the definition of light work.

While Plaintiff's relies on that one statement from Dr. Williamson's opinion in support of his argument, a review of the record demonstrates the ALJ properly supported his RFC determination with substantial evidence including "some" medical evidence. In making a

disability determination, the ALJ shall consider the medical opinions in the record together with the rest of the relevant evidence in the record. 20 C.F.R. § 416.927.

First, the ALJ properly weighed the opinion evidence of record. "The amount of weight given to a medical opinion is to be governed by a number of factors, including the examining relationship, the treatment relationship, consistency, specialization, and other factors." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)). Specifically, the ALJ gave "some weight" to Dr. Williamson's opinion (Tr. 18–19, 296–302). In his report resulting from a consultative examination dated June 7, 2014, Dr. Williamson opined that Plaintiff can sit frequently, probably has to change position frequently, and can stand and walk occasionally limited by back weakness (Tr. 300). However, he also noted Plaintiff had normal muscle strength, had back strength of a level four out of five, could rise from a chair and mount the examination table with ease, could stand on his heels and toes and one foot with ease, could hop on one foot bilaterally with only some difficulty, and had good strength in his limbs (Tr. 18, 299). Dr. Williamson further opined that Plaintiff can lift and carry up to twenty pounds occasionally; reach, handle, and finger frequently; kneel, crouch and crawl occasionally; balance continuously; climb occasionally; and can tolerate heat, cold, and vibration without limitation (*Id*.). The ALJ found Dr. Williamson's opinion consistent with the objective medical evidence, including an x-ray of the lumbar spine, but the ALJ included further limitations in postural activities, including never climbing ladders or scaffolds, kneeling, crouching, or crawling (Tr. 19, 303, 329). The ALJ also included further limitations on exposure to environmental factors (*see* Tr. 14), as the ALJ noted that sweating, for example, could impact the placement of Plaintiff's colostomy bag (Tr. 16, 329). The ALJ assigned appropriate weight to the consulting expert's opinion to the extent it was supported or contradicted by the evidence overall. *See*

*Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (ALJ properly relied on state agency doctors, in part, as ALJ is not required to accept every opinion given by a consultative examiner because "the interpretation of physicians' findings is factual matter left to the ALJ's authority"); *Cantrell v. Apfel*, 231 F.3d 1104, 1007 (8th Cir. 2000).

The ALJ also considered and properly weighed the opinion of Randall Huss, M.D., a treating source ("Dr. Huss"). Dr. Huss completed Interrogatory Questions on June 6, 2016, and opined Plaintiff has to spend extra time in the restroom due to his colostomy bag and would have difficulties standing and walking in a typical work environment due to his medical problems, which included rectal neuropathy, degenerative lumbar disc disease, and COPD (Tr. 327). Dr. Russ also completed a Medical Source Statement on June 6, 2016, in which he opined Plaintiff can lift and carry ten pounds occasionally and frequently, with some shortness of breath (Tr. 328). He further opined Plaintiff can stand and walk a total of four hours in an eight-hour day, sixty minutes at a time; sit for a total of four hours in an eight-hour day, also for sixty minutes at a time, but needs to constantly shift from side to side off of the rectal area (*Id.*). He noted Plaintiff has unlimited ability to push/pull with his hands but limited ability to push/pull with his feet due to his lumbar pain (*Id.*). He also opined Plaintiff can less than occasionally climb, stoop, kneel, and crouch, but can occasionally balance and frequently reach, handle, finger, and feel (Tr. 329). He further opined Plaintiff needed some environmental restrictions due to his medication and colostomy bag, would need to assume a supine position for up to thirty minutes one to three times a day but would not need to assume a reclining position or prop up his legs (*Id.*). The ALJ assigned "little weight" to Dr. Huss's opinion, finding it was inconsistent with other evidence of record, particularly his own treatment records (Tr. 19). For example, while Dr. Huss opined Plaintiff's degenerative disc disease of his lumbar spine was one of the top two

medical reasons for which he was prescribing pain medication (Tr. 327), he inconsistently stated in his medical records that Plaintiff's degenerative lumbar disc disease is "[n]ot a large factor in his chronic pain." (Tr. 258). Dr. Huss's notes also consistently noted no bony tenderness on his examination of Plaintiff's back (*see*, *e.g.*, Tr. 248, 257, 286, 304, 307, 310, 313, 322, 325). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Reece v. Colvin*, No. 15-2460 (8th Cir. Aug. 24, 2016) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ appropriately limited the weight of Dr. Huss's opinions given the inconsistencies with his own treatment notes. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotations omitted) ("A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions.") Plaintiff's daily activities, discussed below, further undermine Dr. Huss's opinion. *Petty v. Colvin*, No. 4:13CV00172 JTK, 2014 WL 3734570, at *3 (E.D. Ark. July 28, 2014) (ALJ may discount a physician's opinion when it is inconsistent with a plaintiff's activities of daily living).

Second, the ALJ appropriately evaluated Plaintiff's subjective complaints.[4] Specifically, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of those symptoms, which supported by the complete file, are not entirely consistent with

---

[4] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929. Moreover, though the ALJ did not specifically cite *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), he considered relevant factors, examining the intensity, persistence, and limiting effect of Plaintiff's functioning; discussing Plaintiff's work history; discussing the effectiveness of medication; and discussing Plaintiff's daily activities (Tr. 15–17). *See Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004) (failure to specifically cite *Polaski* not basis to set aside ALJ's decision where decision is supported by substantial evidence); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). The Court finds the ALJ properly considered relevant factors and regulations in his decision (*see* Tr. 15).

the medical evidence and other evidence in the record" (Tr. 16). In doing so, the ALJ conducted a full review of the limited medical evidence, concluding the evidence of record failed to support a greater limitation than found in the residual functional capacity (*see* Tr. 16–19). For example, and as noted above, Dr. Huss stated Plaintiff's degenerative disc disease was not a large factor in his chronic pain (Tr. 258). The ALJ also noted Plaintiff testified he has not undergone surgery, been treated with transcutaneous electrical nerve stimulation therapy, or received other physical therapy for his lumbar pain (Tr. 15).[5] In addition, and as discussed above, the ALJ cited normal objective findings, including that Dr. Huss consistently found no bony tenderness when examining Plaintiff's back (Tr. 19). Moreover, while Plaintiff was diagnosed with chronic neuropathy and pain related to rectal carcinoma and resulting surgery in 1999 (Tr. 245), examinations demonstrated normal abdominal and bowel evaluations, a normal colonoscopy, and no acute distress (*see*, *e.g.*, Tr. 257, 248, 257, 286, 307, 313). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Furthermore, Plaintiff is a documented smoker who has smoked approximately one-half to one-third pack of cigarettes a day for approximately twenty years, and he has not quit despite being urged to do so (*see*, *e.g.*, Tr. 38, 271, 249). *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (an ALJ may consider disability claimant's failure to stop smoking in making his credibility determination).

---

[5] At one point during the hearing, Plaintiff testified he had no money and did not seek a follow-up colonoscopy due to lack of finances (Tr. 17, 256). In this matter, however, the record does not reflect that Plaintiff sought treatment offered to those who are indigent. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents). Also, there is also no evidence that Plaintiff's doctors recommended more aggressive treatment than he received. *See Goff*, 421 F.3d at 793 (finding it significant that the record did not show a claimant was denied treatment or not provided with alternative, less expensive treatments when needed); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Significantly, in evaluating Plaintiff's subjective complaints, the ALJ found that while Plaintiff has been prescribed and takes medication for the pain associated with his alleged impairments, "the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms" (Tr. 18). The ALJ's opinion is well supported by objective medical evidence. Dr. Huss's medical records repeatedly indicate Plaintiff reported his chronic pain was controlled (Tr. 16–17.) For example, Plaintiff reported his "chronic pain from neuropathy and low back controlled on current regimen" including oxycodone and morphine, later stating his chronic pain was "well controlled" and "keeps him functional" and that he "can be up and active with pain meds" (Tr. 303, 306 312, 318). The same or similar statements appear throughout the records from 2013 through 2016, as the ALJ noted (*e.g.*, Tr. 16–18, 303, 306, 309, 315, 321, 324). *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

The ALJ also found Plaintiff's reported limitations to be inconsistent with his activities of daily living (Tr. 16, 17). Of significance to the ALJ was Plaintiff's self-report to Dr. Huss that he had an increase in low pain from cutting and splitting wood (Tr. 16, 285). *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). As further support, the ALJ noted that Plaintiff's February 2, 2014, Function Report stated he takes care of pets, takes care of personal hygiene, takes out the trash, plays computer games, prepares meals, vacuums, mows the lawn with a riding mower, goes outside daily, drives a car, grocery shops, collects rocks, could lift, and pays bill (Tr. 18, 191–205). Plaintiff testified he could not recall if

he has been restricted in walking, standing, sitting, or lifting by any of this doctors (Tr. 16, 42). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"). Therefore, the ALJ was justified in concluding "the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" (Tr. 18). *See*, *e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).

Plaintiff's argument rests on a sole statement in Dr. Williamson's consultative examination report, and Plaintiff points to no other medical evidence in support of limitations different from those imposed by the ALJ. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider in discounting allegations of disabling pain); *see also Buford*, 824 F.3d at 796 (ultimate burden on claimant to establish RFC). The Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record. Accordingly, as the ALJ appropriately included the restrictions as indicated in his RFC determination in the hypothetical question to the vocational expert, the Court finds the hypothetical that the ALJ submitted to the vocational expert was proper, and the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform (*See* Tr. 20–21, 46–49). *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) ("A hypothetical question posed to the vocational expert is sufficient if

it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 26th day of February, 2019.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE